529 So.2d 1204 (1988)
The MIAMI HERALD PUBLISHING COMPANY, A DIVISION OF KNIGHT-RIDDER, INC. and Joel Achenbach, Petitioners,
v.
Aristides MOREJON, Respondent.
No. 87-1903.
District Court of Appeal of Florida, Third District.
July 26, 1988.
Rehearing Denied September 15, 1988.
*1205 Thomson, Zeder, Bohrer, Werth & Razook and Sanford Bohrer, Miami, for petitioners.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Asst. Public Defender, for respondent.
Before HUBBART, DANIEL S. PEARSON[*] and FERGUSON, JJ.
HUBBART, Judge.
This is a petition for a writ of certiorari which seeks review of a trial court order denying a news journalist's motion to quash a defense discovery deposition subpoena served upon the journalist in a criminal proceeding below. The central question presented for review is whether a news journalist has a qualified privilege under the First Amendment to the United States Constitution, as interpreted by the Florida Supreme Court in Morgan v. State, 337 So.2d 951 (Fla. 1976) and Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), to refuse to divulge information learned as a result of being an eyewitness to a relevant event in a criminal case  i.e., the police arrest and search of the defendant  when the journalist witnesses such an event in connection with a newsgathering mission. We hold that the journalist has no such qualified privilege and must therefore testify concerning his or her knowledge of such an event after being duly served with a witness subpoena in the case. We, accordingly, deny the instant petition for a writ of certiorari, but certify the above-stated question as being of great public importance so as to permit further review of this case by the Florida Supreme Court under Article V, Section 3(b)(4) of the Florida Constitution.

I
The relevant facts of this case are entirely undisputed. The respondent Aristides Morejon was charged by information with trafficking in cocaine before the Circuit Court in Dade County, Florida. He entered a plea of not guilty and filed a discovery demand for the names and addresses of all persons known to the state attorney to have information which might be relevant to the offense charged, see Fla.R.Crim.P. 3.220(a)(1)(i). The state attorney filed a response, in compliance with this demand, in which the petitioner, Joel Achenbach, a staff writer for The Miami Herald, was listed as a person who had information relevant to the offense charged. Subsequently, the respondent had a subpoena issued by the clerk of the circuit court to the petitioner Achenbach for the purpose of taking a discovery deposition concerning the petitioner's knowledge of the case, see Fla.R.Crim.P. 3.220(d). The petitioners, Achenbach and The Miami Herald, thereupon filed a motion to quash the said subpoena, and the matter came on for a hearing below.
At the hearing on the motion to quash, it was shown, without material dispute, that Mr. Achenbach had witnessed the police arrest and search of the respondent Morejon at the Miami International Airport out of which the present drug trafficking charge arose. The respondent was challenging this arrest and search in a previously filed motion to suppress and was seeking to discover all relevant facts which Mr. Achenbach knew about the incident. At the time of the subject arrest and search, Mr. Achenbach was on a journalistic assignment from The Miami Herald to prepare an article on the airport for the Sunday Herald's Tropic Magazine. Shortly thereafter, such an article did appear in the Tropic Magazine under Mr. Achenbach's byline in which certain details of the arrest and search of the respondent and his airtraveling companion were related. It is undisputed that Mr. Achenbach did not rely on any confidential news sources in writing this article.
*1206 The essence of the petitioners' argument on the motion to quash was that Mr. Achenbach had a qualified privilege under the First Amendment of the United States Constitution to refuse to testify concerning his knowledge of the subject arrest and search. The trial court rejected this claim and denied the motion to quash. This petition for a writ of certiorari follows.

II
The Florida Supreme Court has held  based on its interpretation of Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)  that a journalist has a qualified privilege under the First Amendment to the United States Constitution to refuse to testify in a criminal or civil proceeding with respect to information learned by the journalist from confidential news sources while on a newsgathering mission, including the identity of such sources; in determining whether such a qualified privilege exists in a particular case, the court must balance the competing governmental and free-press interests involved. Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986); Morgan v. State, 337 So.2d 951 (Fla. 1976) (receding from Clein v. State, 52 So.2d 117, 120 (Fla. 1950), which held that journalists had no "privilege of confidential communication as between themselves and their informants"). As the Court stated in Huffstetler, "we have previously recognized [in Morgan] a qualified reporter's privilege against the forced revelation of [news] sources," 489 So.2d at 723, which privilege, in turn, is applied by "[w]eighing the limited and qualified privilege that a reporter has to protect his sources of information against the public interests [involved in a particular case] ...," id. at 722, so as to "strik[e] a proper balance between constitutional and societal interests," id. at 723, including "`freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct.'" Id. (quoting Branzburg, 408 U.S. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656) (Powell, J., concurring)). The underlying rationale for recognizing such a qualified privilege is that "news gathering [is] an essential precondition to [the] dissemination of news ...," and that "`without some protection for seeking out the news, freedom of the press could be eviscerated,'" Morgan, 337 So.2d at 954 (quoting Branzburg, 408 U.S. at 681, 92 S.Ct. at 2656, 33 L.Ed.2d at 639), because confidential news sources would soon dry up if journalists were automatically required to disclose same.
In conducting this delicate balancing process to determine whether the news journalist's qualified privilege is applicable in a given case, the Florida Supreme Court in Morgan concluded that a journalist was privileged to refuse to divulge the identity of a confidential news source to a grand jury which was investigating an unauthorized, but non-criminal disclosure by the said source to the journalist of a sealed grand jury presentment. The Florida Supreme Court in Huffstetler, using the same balancing analysis, held that a journalist was privileged to refuse to divulge the identity of a confidential news source to a state attorney who was investigating an unauthorized, but non-criminal disclosure by the said source to the journalist of a complaint filed before the state ethics commission. In each case, the Court concluded that the free-press interests involved in protecting the confidential news source outweighed the public interests served by the subject investigation. On the other hand, the United States Supreme Court in Branzburg held that a journalist was not privileged to refuse to divulge the identity of confidential sources to a grand jury which was investigating illegal drug offenses disclosed to the journalist by the said sources.
The Florida Supreme Court has not further delineated the nature of the balancing process involved in determining whether the journalist's qualified privilege applies in a given case. The First District Court of Appeal, however, has considered this issue in some depth and has held that in striking "the `proper balance' between the interests of the press and the party seeking disclosure as required by Morgan," the court "must address the following issues: (1) is the information relevant, *1207 (2) can the information be obtained by alternative means, and (3) is there a compelling interest in the information?" Gadsden County Times, Inc. v. Horne, 426 So.2d 1234, 1241 (Fla. 1st DCA), rev. denied, 441 So.2d 631 (Fla. 1983). These questions represent relevant factors which the court must consider in the balancing process, but do not, as urged, establish a "three-part test" which the party seeking information from the journalist must satisfy in order to obtain such information; moreover, it seems clear that the burden of proof on this issue should rest with the journalist who asserts his qualified privilege, not with the party seeking the information which the journalist refuses to disclose. Cf. In re Tierney, 328 So.2d 40, 44 (Fla. 4th DCA 1976). Utilizing this three-question method of balancing reasoning, the Horne court concluded that a journalist, who was a defendant in a defamation action, was privileged to refuse to divulge to the plaintiff in pretrial discovery the identity of a confidential source who provided the journalist with information which was the basis for the allegedly defamatory newspaper article sued upon. Whether the Florida Supreme Court will ultimately adopt this mode of analysis remains to be seen as it has yet to pass on the matter.
More to the point, however, the Florida Supreme Court has never considered whether the qualified journalist privilege established by Morgan and Huffstetler should be extended to include, as here, non-confidential sources of information  so as to create, in effect, a work product privilege as to all information learned, or evidence obtained, by a journalist while on a newsgathering mission. The Second District Court of Appeal, however, has specifically so held; in so doing, the court utilized the Horne court's three-part balancing analysis and concluded that a news journalist was privileged to refuse to testify at a deposition in a criminal case concerning conversations the journalist had with the defendant and a third party, which conversations formed the basis of a subsequent newspaper article written by the journalist, even though the defendant and third party were specifically named in the article and so were not "confidential sources." Tribune Co. v. Green, 440 So.2d 484 (Fla. 2d DCA 1983), rev. denied, 447 So.2d 886 (Fla. 1984). Moreover, the Second District has further extended this holding so as to allow a journalist/photographer to refuse to produce an unpublished photograph of an automobile accident pursuant to a pretrial discovery order in a negligence action. Johnson v. Bentley, 457 So.2d 507 (Fla. 2d DCA 1984). On the other hand, the Fourth District Court of Appeal has reached an opposite result by holding that a journalist has no constitutional privilege to refuse to divulge to state authorities direct photographic evidence of a crime, as opposed to information gained from confidential sources. Satz v. News & Sun-Sentinel Co., 484 So.2d 590 (Fla. 4th DCA 1985), rev. denied, 494 So.2d 1152 (Fla. 1986).
We frankly have serious doubts as to whether a news journalist's qualified privilege to refuse to divulge information from confidential news sources, as established in Morgan and Huffstetler, should be extended wholesale to include all non-confidential sources of information and evidence so as to create, in effect, an across-the-board work product privilege for such journalists as the Second District has done in Green and Johnson  and are more inclined to the Fourth District's more moderate view on this issue in Satz. We lean to this view because the underlying rationale for creating the news journalist's qualified privilege for confidential news sources does not appear to apply to most non-confidential sources of information or other like physical evidence. Unlike confidential news sources which are likely to dry up if disclosed, non-confidential news sources and like evidence seem, for the most part, unlikely to disappear if journalists are required to testify concerning same in a subsequent court proceeding  and thus newsgathering and dissemination do not appear to be seriously threatened by such disclosure. We are not unmindful, however, of petitioners' forceful arguments to the contrary supported by some non-binding, but not unimpressive, authority. See, e.g., United States v. Blanton, 534 F. Supp. 295, *1208 296 (S.D.Fla. 1982); Loadholtz v. Fields, 389 F. Supp. 1299, 1302-03 (M.D.Fla. 1975); Schwartz v. Almart Stores, Inc., 42 Fla. Supp. 165, 166 (Fla. 11th Cir.Ct. 1975) (Schwartz, J.).
Nonetheless, we need not resolve this difficult issue because we think at the very least the qualified journalist privilege established in Morgan and Huffstetler has utterly no application to information learned by a journalist as a result of being an eyewitness to a relevant event in a subsequent court proceeding, such as the police arrest and search of a defendant in a criminal case. Indeed, no court in Florida or, to our knowledge, in the country, has ever extended the news journalist's qualified privilege to such an extreme as to include such eyewitness testimony; we decline to be the first court to so hold. Just as any other private citizen is expected to give his eyewitness testimony to such relevant events in subsequent court proceedings, so, too, a journalist, as a citizen, is expected to give similar testimony. The fact that the journalist is on a newsgathering mission when he or she witnesses such a relevant event cannot change this result because the ability of the journalist to gather and report on the witnessed event is not substantially threatened by requiring the disclosure of what was seen in a subsequent court proceeding  and thus no substantial free-press interests are imperiled. Moreover, the fact that it is inconvenient for a journalist to respond to a witness subpoena and give his eyewitness testimony is of no constitutional significance; all persons who witness such events are equally inconvenienced by having to respond to such witness subpoenas, and a journalist occupies no privileged position in this respect from any other person in the community. United States v. Steelhammer, 561 F.2d 539 (4th Cir.1977) (en banc) (adopting on rehearing 539 F.2d 373, 376-78 (4th Cir.1976) (Winter, J., dissenting)); see also United States v. Liddy, 354 F. Supp. 208 (D.D.C.), emergency stay denied, 478 F.2d 586 (D.C. Cir.1972).

III
Turning now to the instant case, it is clear, based on the above-stated law, that Mr. Achenbach had no qualified privilege under the First Amendment to refuse to testify concerning his eyewitness observation of the police arrest and search in the criminal proceeding below. Without dispute, his information concerning this case is not based on any confidential news sources and is derived entirely from his eyewitness observation of the subject arrest and search. This being so, the aforesaid qualified privilege has no application to this case, and the trial court was entirely correct in denying the motion to quash below. The petition for a writ of certiorari is therefore
Denied.
NOTES
[*] Judge Pearson participated in the decision, but did not hear oral argument.