578 So.2d 698 (1991)
CBS, INC., Petitioner,
v.
Kareem JACKSON, Respondent.
No. 75719.
Supreme Court of Florida.
April 25, 1991.
Thomas R. Julin of Steel, Hector & Davis, Miami, and Douglas P. Jacobs, Susanna M. Lowy and John W. Zucker, New York City, for petitioner.
Alan S. Levine, Fort Lauderdale, for respondent.
*699 Laura Besvinick of Greer, Homer & Bonner, P.A., Miami, amicus curiae for Miami Herald Pub. Co.
PER CURIAM.
We review CBS, Inc. v. Jackson, 557 So.2d 233, 233 (Fla. 4th DCA 1990), in which the district court certified the following question as being of great public importance:
DOES A TELEVISION JOURNALIST HAVE A QUALIFIED PRIVILEGE IN A CRIMINAL PROCEEDING TO REFUSE TO PRODUCE NON-TELEVISED VIDEO TAPES DEPICTING THE DEFENDANT IN THE CUSTODY OF THE POLICE WHEN THE DEFENDANT REQUESTS THE TAPES IN ORDER TO ASSIST IN THE PREPARATION OF HIS DEFENSE?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in a qualified negative.
During a law enforcement operation, police arrested Jackson on cocaine possession charges. A CBS news team videotaped portions of that operation and broadcast excerpts from the videotapes on television. In preparation for trial, Jackson deposed the arresting officer whose recounting of the arrest was inconclusive. Jackson then served a subpoena duces tecum on CBS, seeking the portions of the videotapes pertaining to him which were not televised (outtakes). In response, CBS moved to quash the subpoena, claiming that the outtakes were protected work product under the journalist's qualified privilege. The trial court denied the motion, finding the privilege inapplicable because the information was not from a confidential source. Moreover, the trial court found that, if the qualified privilege indeed applied, the record showed that Jackson had met and overcome the burden of proof necessary to compel disclosure of the outtakes. The district court denied CBS's petition for certiorari and certified the aforementioned question to this Court as one of great public importance.
At the trial court and before the district court, CBS argued that journalists, because of the nature of their work and the implication of the first amendment guarantee of a free press,[1] have a qualified privilege against the compelled disclosure of any information obtained while on a news-gathering mission. CBS contends that such information is privileged unless and until a judicial officer determines that the party seeking discovery has established that (1) the information sought to be obtained is relevant and material, (2) all alternative sources to obtain the information have been exhausted, and (3) there is a compelling need for the information. See CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla. 2d DCA 1988); Tribune Co. v. Green, 440 So.2d 484 (Fla. 2d DCA 1983), review denied, 447 So.2d 886 (Fla. 1984); Gadsden County Times, Inc. v. Horne, 426 So.2d 1234 (Fla. 1st DCA), review denied, 441 So.2d 631 (Fla. 1983). We disagree that such a qualified privilege exists under the circumstances of this case.
We accepted jurisdiction in this case before we published Miami Herald Publishing Co. v. Morejon, 561 So.2d 577 (Fla. 1990). There, we observed that the journalist's qualified privilege originated from Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In Branzburg the reporters claimed that, if forced to testify before a grand jury and reveal the identities of their confidential sources, those sources would refuse to furnish information in the future, thereby hampering the reporters' news-gathering ability. The plurality opinion rejected the reporters' claim, but, however, recognized that "without some protection for seeking out the news, freedom of the press could be eviscerated." Id. at 681, 92 S.Ct. at 2656. Justice Powell cast the deciding vote against the reporters in his concurring opinion and stated:

*700 The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.
Id. at 710, 92 S.Ct. at 2671.
In Morgan v. State, 337 So.2d 951 (Fla. 1976), and Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), this Court held that journalists have a qualified privilege against the forced revelation of their confidential sources of information and applied the case-by-case balancing approach set forth by Justice Powell. In Morejon, however, we rejected the claim of a qualified privilege when the journalist was an eyewitness to a police search and subsequent arrest of the defendant. We held that "there is no privilege, qualified, limited, or otherwise, which protects journalists from testifying as to their eyewitness observations of a relevant event in a subsequent court proceeding. The fact that the reporter in this case witnessed the event while on a newsgathering mission does not alter our decision." Morejon, 561 So.2d at 580. We therefore found it unnecessary to balance the respective interests involved.
In the case under review, the sought-after discovery is the untelevised CBS videotapes of Jackson's arrest. From a first amendment privilege standpoint, we can perceive no significant difference in the examination of an electronic recording of an event and verbal testimony about the event. What Jackson seeks to discover is physical evidence of the events surrounding his arrest. His request does not implicate any sources of information. We see no realistic threat of restraint or impingement on the news-gathering process by subjecting the videotapes to discovery. Although the media may be somewhat inconvenienced by having to respond to such discovery requests, mere inconvenience neither eviscerates freedom of the press nor triggers the application of the journalist's qualified privilege. Because the qualified privilege does not apply under the circumstances of this case, we need not balance the respective interests involved. Morejon; Huffstetler (Boyd, C.J., dissenting). Thus, we find no first amendment impediment to the compelled discovery of these videotapes. See Zurcher v. Stanford Daily, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); Carroll Contracting, Inc. v. Edwards, 528 So.2d 951 (Fla. 5th DCA), review denied, 536 So.2d 243 (Fla. 1988); see also Satz v. News & Sun-Sentinel Co., 484 So.2d 590 (Fla. 4th DCA 1985) (journalist's qualified privilege inapplicable when seeking discovery of unpublished photographs of criminal activity; courts must distinguish between information gained from confidential sources and physical evidence of crime  the latter has no privilege), review denied, 494 So.2d 1152 (Fla. 1986).[2]
While CBS seeks to implicate the first amendment, we think that its concern is more legitimately directed toward the trouble and expense of having to furnish the video outtakes. Neither CBS nor anyone else should be required to furnish photographs, videotapes, or similar tangible property acquired in the course of its business to a party with whom it is not in litigation without being reimbursed for the reasonable expenses incurred in making such property available. In the event the person who is subpoenaed to produce the property cannot obtain satisfactory reimbursement for its reasonable expenses, such person may seek a protective order under Florida Rule of Civil Procedure 1.280(c).[3] These rules are broad enough to *701 protect the media and similarly situated entities, as well as those seeking discovery.
In this case, the subpoena itself reflected the willingness to pay for the reasonable costs of preparation of the outtakes. Therefore, CBS has no basis to complain. We answer the certified question in the negative and approve the decision of the district court of appeal.
It is so ordered.
SHAW, C.J., and OVERTON, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
BARKETT, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part, dissenting in part.
I agree with the majority opinion that a journalist has no qualified privilege from producing physical evidence of a crime or one's arrest therefor.
On the other hand, what is sought here is the production of personal property gathered and owned by a nonparty for its own business purposes. It is only reasonable that, if the owner objects to producing such proprietary material, the party seeking the material should demonstrate to a judicial tribunal that it is relevant, that no alternative source exists, and that the party has a need for the information before its production for inspection is compelled. This basically is the same test employed when a qualified privilege exists or when a party claims a work product privilege for tangible evidence gathered in anticipation of trial as in Wackenhut Corp. v. Crant-Heisz Enterprises, Inc., 451 So.2d 900 (Fla. 2d DCA 1984). No person's business activity should be interrupted or its work product disclosed until such a necessity therefor is shown. When one faces criminal prosecution such a showing should not be difficult and I would require it as a matter of policy.
In this case the trial judge found that, even if a qualified privilege existed, the necessary requirements to support the subpoena had been met. The record supports this decision.
BARKETT, J., concurs.
BARKETT, Justice concurring in part, dissenting in part.
I agree with the result as to the qualified privilege because this case is controlled by Miami Herald Publishing Co. v. Morejon, 561 So.2d 577 (Fla. 1990). However, I adhere to the position stated in my special concurrence in Morejon. First amendment interests are implicated when members of the press act in their professional capacity on a news-gathering mission, and a qualified privilege must be found or rejected only after balancing all of the interests.
NOTES
[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. 1; see art. 1, § 4, Fla. Const.
[2] In reaching this decision, we note that CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla. 2d DCA 1988), and Johnson v. Bentley, 457 So.2d 507 (Fla. 2d DCA 1984), both addressed factual situations where a party sought discovery of unpublished photographs or videotape from the news media. In Cobb and Johnson the district court held that the journalist's qualified privilege applied. To that extent, in light of our decision in the case at bar, we disapprove those decisions.
[3] We recognize that the current dispute arose out of a criminal action, and there is no rule of criminal procedure comparable to Florida Rule of Civil Procedure 1.280(c). However, we believe that a criminal trial judge has the inherent authority to issue protective orders involving the production of tangible property by third parties equivalent in scope to that contemplated by rule 1.280(c). See Green v. State, 377 So.2d 193 (Fla. 3d DCA 1979).